1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6                                 SAN JOSE DIVISION

7

8    C.D.,                                      Case No. 22-cv-05574-VKD

9                    Plaintiff,                 **ORDER GRANTING PLAINTIFF'S**
                                                **MOTION FOR SUMMARY**
10            v.                                **JUDGMENT AND DENYING**
                                                **DEFENDANT'S CROSS-MOTION FOR**
11   KILOLO KIJAKAZI,                           **SUMMARY JUDGMENT**

12                   Defendant.                 Re: Dkt. Nos. 15, 17

13

14         Plaintiff C.D.[1] appeals from a final decision of the Commissioner of Social Security ("the

15   Commissioner") denying his application for disability insurance benefits under Title II of the

16   Social Security Act ("Act"), 42 U.S.C. § 423, *et seq.* C.D. contends that the administrative law

17   judge ("ALJ") erred in several ways when adjudicating his application. First, he contends that the

18   ALJ erred in evaluating the opinions of his medical sources. Second, he contends the that the ALJ

19   erred by failing to consider his Department of Veterans Affairs ("VA") disability rating. Third, he

20   contends that the ALJ erred by improperly discounting his subjective testimony about his

21   symptoms. Fourth, he contends that the ALJ erred in finding that his impairments did not meet or

22   equal Listing 12.15. Fifth, he contends that the ALJ's residual functional capacity ("RFC")

23   finding is not supported by substantial evidence.

24         The parties have filed cross-motions for summary judgment. Dkt. Nos. 15, 16. The matter

25

26   _____

27   [1] Because opinions by the Court are more widely available than other filings, and this order
     contains potentially sensitive medical information, this order refers to the plaintiff only by his
     initials. This order does not alter the degree of public access to other filings in this action
28   provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil L.R. 5-1(c)(5)(B)(i).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    was submitted without oral argument.  *See* Civil L.R. 7-1(b).  Upon consideration of the moving

2    and responding papers and the relevant evidence of record, the Court grants C.D.'s motion for

3    summary judgment and denies the Commissioner's cross-motion for summary judgment.[2]

4    **I.    BACKGROUND**

5         C.D. filed an application for disability insurance benefits on August 19, 2020 at age 43.

6    AR 15, 76.[3]  He alleged that he had been disabled since July 27, 2014 due to post traumatic stress

7    disorder ("PTSD"), major depressive disorder, a traumatic brain injury ("TBI"), hip pain, and a

8    finger facture.  AR 18, 73, 83, 232.  Prior to the alleged onset of his disability, C.D., who holds a

9    juris doctor degree, was a military attorney and officer in the U.S. Army JAG Corps from 2006 to

10   2014.  AR 43, 257, 259.

11        C.D. was deployed to Iraq as a combat advisor in 2007, where he provided

12   recommendations and briefings on the legality of military operations.  AR 44-46, 1073-74.  In this

13   role, C.D. often had to make decisions about "'whether a kill was within justification for an

14   incident.'"  AR 1307.  This responsibility made C.D. feel as if he was "'holding all the nuclear

15   waste'" and was the "'sin-bearer'" for his fellow soldiers.  AR 864.  He now feels "extreme guilt

16   and anguish over his role [in Iraq.]"  AR 1307.  During his service in Iraq, C.D. "witnessed

17   torture, military operations, [and] 'collateral damage'" and began to experience symptoms of

18   PTSD.  AR 44-46, 1073-74.

19        In 2013, C.D. received inpatient treatment for PTSD.  AR 1074, 1188, 1306.  That same

20   year, he fell in the bathroom—potentially due to the side effects of a sleep medication prescribed

21   to treat his PTSD—and suffered a TBI, a temporal subdural hematoma, and a skull fracture.  AR

22   1073-74, 1190-91, 1306.  C.D. medically retired from the Army in May of 2014.  AR 43, 344,

23   1074.  The VA assigned C.D. a 100% disability rating and found him totally and permanently

24   disabled, effective July 27, 2020.  AR 344.

25        C.D.'s application for disability insurance benefits was denied initially and on

26

27   [2] All parties have expressly consented that all proceedings in this matter may be heard and finally
     adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 10, 11.

28   [3] "AR" refers to the certified administrative record filed with the Court.  Dkt. No. 13.

reconsideration.  AR 15, 76, 88.  An ALJ held a hearing and subsequently issued an unfavorable

decision on June 2, 2022, finding that C.D. was not disabled.  AR 12, 15.  The ALJ found that

C.D. met the insured status requirements of the Act through December 31, 2019 and that he had

not engaged in substantial gainful activity since the alleged onset of disability on July 27, 2014.

AR 15, 18.  She further found that C.D. had the following severe impairments:  "post-traumatic

stress disorder, major depressive disorder, and traumatic brain injury."  AR 18.  She also found

that C.D.'s hip pain and finger fracture were non-severe impairments.  AR 18.

      The ALJ concluded that C.D. did not have an impairment or combination of impairments

that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  AR 18.  She considered whether C.D. met two listings:  12.15 (Trauma-

and stressor-related disorders) and 12.04 (Depressive, bipolar and related disorders).  AR 19.  In

making her determination that C.D. did not meet either listing, the ALJ did not make any specific

findings regarding the paragraph A criteria (medical criteria), but concluded that C.D. had no more

than a moderate limitation in all four paragraph B criteria (broad areas of mental functioning) and

that he did not meet the paragraph C criteria (serious and persistent impairment).  AR 19-20; *see

also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00.A.2.a-c.

      The ALJ then determined that C.D. had the RFC to "perform a full range of work at all

exertional levels but with the following nonexertional limitations:  the claimant is capable of

unskilled, simple, repetitive, and routine tasks, with no assembly line work.  The claimant can

have no exposure to unprotected heights, hazardous machinery, or commercial driving.  The

claimant can have no public interaction and only occasional co-worker interaction, but no tandem

tasks with co-workers."  AR 20.  Based on this RFC, the ALJ concluded that C.D. was unable to

return to his past relevant work as an attorney (Dictionary of Occupational Titles ("DOT") code

110.107-010).  AR 26-27.  However, the ALJ found that given C.D.'s "age, education, work

experience, and residual functional capacity, there were jobs that existed in significant numbers in

the national economy that the claimant could have performed," including hand launderer (DOT

code 361.684-010), floor waxer (DOT code 381.687-034), and industrial cleaner (DOT code

381.687-018).  AR 27-28.

United States District Court
Northern District of California

United States District Court
Northern District of California

C.D. appealed the ALJ's decision to the Appeals Council, which denied his request for review.  AR 1-5.  He then filed this action seeking judicial review of the decision denying his application for benefits.  *See* Dkt. No. 1.

## II.      LEGAL STANDARD

This Court has the authority to review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g).  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Ahearn*, 988 F.3d at 1115; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner.  *Ahearn*, 988 F.3d at 1115-16; *Morgan*, 169 F.3d at 599.

## III.     DISCUSSION

C.D. argues that the ALJ erred by improperly evaluating the medical opinions in the record, by failing to consider his VA disability rating, and by failing to provide sufficient reasons for discounting his subjective testimony.  He contends that, as a result of these errors, both the ALJ's determination that he did not meet or equal any listed impairments and the ALJ's RFC finding were not supported by substantial evidence.

### A.      Medical Opinions

C.D. argues that the ALJ erred by discounting the opinions of two of his treating providers, therapist Robert Cleveland, LCSW and psychologist Jerry Boriskin, Ph.D., regarding his mental

4

United States District Court
Northern District of California

impairments.  Dkt. No. 15 at 3-5.[4]  The Court agrees.

### 1.    Summary of Medical Opinion Evidence

Both Mr. Cleveland and Dr. Boriskin submitted letters in support of C.D.'s disability benefits application opining that his PTSD imposed significant limitations on his ability to work. *See* AR 1306-14.

Mr. Cleveland opined that C.D. had "no useful ability to function" in numerous areas, including "remembering work-like procedures, maintaining attention for a 2-hour segment, maintaining regular attendance and being punctual within customary usually strict tolerances, sustaining and ordinary routine without special supervision, working in coordination with or proximity to others without being distracted, making simple work-related decisions, completing a normal workday and work week without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticisms from supervisors, getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in the work setting, dealing with work relate[d] stress, understanding and remembering detailed instructions, carrying out detailed instructions, setting realistic goals or making plans independently of others, and dealing with [the] stress of semiskilled and skilled work."  AR 1309-10.  He also opined that C.D. was "unable to meet competitive standards" in "interacting appropriately with the public for short or extended periods of time, traveling to unfamiliar places, and using public transportation."  AR 1310.

Dr. Boriskin reviewed Mr. Cleveland's letter and submitted his own, in which he stated

---

[4] C.D. also contends that the ALJ erred in by discounting "all the opinions of record" with respect to his physical impairments. Dkt. No. 15 at 4.  However, as the Commissioner points out, the only medical opinion in the record regarding C.D.'s physical impairments is that of S. Amon, M.D., a state agency consultant. Dkt. No. 17 at 11-12; *see also* AR 73.  Dr. Amon opined that C.D.'s physical impairments were non-severe, but the ALJ found that opinion was "not consistent with the medical evidence in the file which shows the claimant experienced symptoms related to his traumatic brain injury."  AR 26.  The ALJ concluded that Dr. Amon's opinion was "not persuasive."  AR 26.  This finding is supported by substantial evidence.  The medical evidence confirms that C.D. suffered a TBI in July of 2013 and received treatment for TBI symptoms after the alleged onset of disability.  AR 923, 1275.

that he was "in complete agreement with Mr. Cleveland's assessments regarding [C.D.'s] functional limitations."  AR 1312.  Dr. Boriskin also expressed his "complete agreement" with Mr. Cleveland's opinion that "[C.D.'s] impairments are significant and pervasive and will with certainty last him the remainder of his life."  AR 1311.

The ALJ found Mr. Cleveland and Dr. Boriskin's opinions "not persuasive."  AR 25.  In both cases, she acknowledged the providers had an "established treating relationship" with C.D. AR 25-26.  However, she concluded that Mr. Cleveland and Dr. Boriskin's opinions were "not supported by the claimant's capabilities during his exams" and "inconsistent with the other medical evidence in the file."  AR 25-26.[5]  The ALJ also reviewed the opinion of a state agency consultant regarding C.D.'s mental impairments, but did not consider it because the consultant had found "insufficient evidence to assess" C.D.'s mental impairments.  AR 25.

### 2.    Legal Standard

Under the regulations that apply to C.D.'s application,[6] the Commissioner no longer gives specific evidentiary weight to medical opinions, including the deference formerly given to the opinions of treating physicians.  Instead, the Commissioner evaluates the "persuasiveness" of all medical opinions in the record based on:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c; *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.").  As with all other determinations made by

---

[5] While the ALJ says that the providers' opinions were "not supported by" the evidence, her findings appear to concern the opinions' consistency with the evidence, rather than its supportability.  *See Woods v. Kijakazi*, 32 F.4th 785, 793 n.4 (9th Cir. 2022).

[6] On January 18, 2017, the Commissioner promulgated new regulations concerning the evaluation of medical opinions.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).  These new regulations apply to all applications for benefits filed after March 27, 2017.  *Id.*; 20 C.F.R. § 404.1520c.  Since C.D.'s application was filed after March 27, 2017, these new regulations apply to his case.  *See* AR 18.

United States District Court
Northern District of California

the ALJ, the ALJ's persuasiveness explanation must be supported by substantial evidence. *Woods*, 32 F.4th at 792 ("[U]nder the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

Supportability and consistency are considered the most important factors, and the ALJ is required to explicitly address them in his or her decision. 20 C.F.R. § 404.1520c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations. 20 C.F.R. § 404.1520c(b)(2).

While there "is a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work," *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022), the evaluation of medical opinions must be based on a "holistic view of the record." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

### 3.     Application

#### a.     Robert Cleveland, LCSW

The ALJ found that Mr. Cleveland's opinion was "not supported by the claimant's capabilities during his exams."[7] AR 25. The ALJ based this finding on Mr. Cleveland's report that during therapy sessions C.D. "was cooperative and had good eye contact," "was fully alert & oriented during his sessions and had organized thought processes," and "[though C.D.] had poor

---

[7] Mr. Cleveland, a social worker, is not an "acceptable medical source" under Social Security Administration regulations. 20 C.F.R. § 404.1502(a); 82 Fed. Reg. 5844, 5846-47. However, under the post-2017 regulations, the ALJ was required to consider his opinion using the same standard that applies to other medical sources. *See* 82 Fed. Reg. 5844, 5844-45; 20 C.F.R. § 404.1520c; *Johnson v. Kijakazi*, No. 21-15919, 2022 WL 2593516, at *1 (9th Cir. July 8, 2022).

United States District Court
Northern District of California

United States District Court
Northern District of California

short-term memory, his judgment was intact." AR 25.  This finding is not supported by the record for two reasons.  First, the observations that C.D. was "cooperative" and "oriented" during therapy are not inconsistent with (or even relevant to) Mr. Cleveland's assessment of C.D.'s impairments.  As Mr. Cleveland explained:  "[C.D.'s] behaviors are not inappropriate, and he conducts himself in a manner befitting and individual of his excellent character.  It is the emotional (psychiatric) symptoms related to his multiple conditions that make it extremely difficult for him to interact with others especially when he experiences or reacts to a myriad of distressing cognitions which occur without warning."  AR 1307.  Second, Mr. Cleveland made other observations—not discussed by the ALJ—that support his assessment that C.D.'s ability to work is severely limited by his PTSD.  For example, Mr. Cleveland reported:  "His depression and anxiety are reported to be and are observed as severe.  Ongoing feelings of hopelessness and helplessness persist.  Para-suicidal thoughts are intermittent but currently do not rise to the level of inpatient psychiatric care, however this will require ongoing monitoring.  His speech is slow in rate and is monotone.  Psychomotor retardation is present.  His foundational knowledge is intact however he is challenged in the application of that knowledge in areas of employment and interactions in social constructs.  He has poor short-term memory, exacerbated by the introduction of minor stressors into his daily circumstances.  He is easily overwhelmed in making simple or complex decisions."  AR 1307.

The ALJ also found that Mr. Cleveland's opinion was "inconsistent with other medical evidence in the file" because, C.D. "worked with a personal trainer in the gym" and "was the primary caregiver of his children."  AR 25.  The ALJ determined that these activities contradicted Mr. Cleveland's opinion that C.D.'s PTSD "caused [him] to isolate from others" and that he was "often unmotivated to complete tasks."  AR 25.  This finding also is not supported by the record.  Rather, the record reflects that C.D.'s work with a personal trainer at the gym was a recommended and beneficial part of his treatment for TBI and not inconsistent with the objective medical evidence of his mental impairments.  The reference to a personal trainer appears in a February 17, 2015 "Polytrauma/TBI Physiatry Follow Up" report written by Dr. Hetal Lakhani, a VA physical medicine and rehabilitation specialist.  AR 1225-27.  Dr. Lakhani reported that C.D. complained

United States District Court
Northern District of California

1   of "cognitive dysfunction, balance changes, vision changes and PTSD [symptoms]" and

2   "problems with mood disturbance [and] anxiety."  AR 1227.  In that report, Dr. Lahkani also

3   stated that C.D. was having marital problems and his wife had threatened divorce.  AR 1225.

4   Treatment notes from Dr. Boriskin from the same time period suggest that C.D.'s PTSD was a

5   major factor in his relationship difficulties.  AR 1243-44; *see also* AR 56.  Dr. Lahkani's treatment

6   plan for C.D. included, among other things, the suggestion that C.D. "continue exercise."  AR

7   1227.

8          Likewise, while C.D. did spend time caring for his children, he also reported limitations in

9   his ability to do so.  *See, e.g.*, AR 50 ("I try to help them if I can.  I spend a lot of time in my

10   room.  I look at my phone a lot and try to—when my wife is at work I keep things from going

11   crazy at home with two boys who like to fight with each other."); AR 53 ("I try to read to the boys

12   at night before bed, just to do something [] together, but I find it hard to stay focused to get

13   through books.").

14          In sum, the ALJ's stated reasons for discounting Mr. Cleveland's opinions as "not

15   persuasive" are not supported by substantial evidence.  Rather the ALJ appears to have "cherry-

16   picked" some of Mr. Cleveland's statements and taken others out context, while ignoring other

17   statements that support Mr. Cleveland's opinions.  *See Ghanim*, 763 F.3d at 1164 ("[T]he ALJ

18   improperly cherry-picked some of [provider's] characterizations of [claimant's ] rapport and

19   demeanor instead of considering these factors in the context of [his] diagnoses and observations of

20   impairment."); *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (ALJ erred by

21   "ignore[ing] other evidence showing the difficulties [claimant] faced in everyday life.").

22                              **b.      Jerry Boriskin, Ph.D.**

23          The ALJ found that Dr. Boriskin's opinion also was "not supported by the claimant's

24   capabilities during his exams."  AR 25.  In support, she cited Dr. Boriskin's treatment notes

25   stating that "claimant was reading a great deal and generally doing well" and that "he [had]

26   recently returned to the gym[] and had rational thought processes."  AR 25.  This finding is not

27   supported by the record.

28          The statements in Dr. Boriskin's treatment notes "must be read in context of the overall

9

1    diagnostic picture he draws." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).  A few

2    positive observations do not render a medical professional's diagnosis unsupported or inconsistent

3    with the objective medical evidence.  *See Smith v. Kijakazi*, 14 F.4th 1108, 1115 (9th Cir. 2021)

4    ("Physician reports of improvement are not sufficient to undermine the repeated diagnosis of the

5    alleged mental health conditions.") (cleaned up).  While Dr. Boriskin documented occasional

6    improvements in C.D.'s condition, his notes also contain evidence supporting his opinion that

7    C.D. continued to suffer significant mental impairments.  For example, in the January 19, 2016

8    treatment note where Dr. Boriskin indicated that C.D. was "doing well," Dr. Boriskin also

9    observed that C.D. appeared tired and sad, was in a depressed mood, had limited insight and

10   judgment, and was experiencing "ongoing vague suicidal ideation, no plan or imminent threat at

11   this time."  AR 1165-66.  Dr. Boriskin made similar observations in a March 15, 2016 treatment

12   note also cited by the ALJ.  AR 1163-65.  In that note, Dr. Boriskin reported a negative trend in

13   C.D.'s symptoms and described C.D.'s return to the gym as "corrective measure."  AR 1164

14   ("[C.D.] noted a decline in mood; he is becoming a bit more depressed with some obsessional

15   thinking and hypervigil[a]nce.  He is aware that some of this may be associated with anniversary

16   phenomena as well as a bit of neur[a]sthenia in terms of being stay at home dad.  He is taking

17   corrective measures and recently returned to the gym.").  Instead of considering Dr. Boriskin's

18   treatment notes as a whole, the ALJ appears to have "cherry-picked" statements that support a

19   denial of benefits, while overlooking those statements that support Dr. Boriskin's opinions.

20   *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) (quoting *Scott v. Astrue*, 647 F.3d 734, 740

21   (7th Cir. 2011)).

22          The ALJ's conclusion that Dr. Boriskin's opinions are inconsistent with the medical

23   evidence also is not supported by substantial evidence.  The ALJ cited a March 2015 appointment

24   where C.D. reported "doing better and [] engaging with others more."  AR 26.  While Dr.

25   Boriskin's notes from that session do indeed describe a "remarkable improvement," later records

26   describe him "regress[ing]" after a "rougher few months."  AR 1184, 1222.  "[T]wo or three

27   reports of improvement . . . without reference to other treatment records or any other explanation"

28   are not enough to conclude that a medical professional's "considered conclusions about [a

10

1    claimant's] overall prognosis merit[] little weight." *Garrison*, 759 F.3d at 1014.  "[T]he examples

2    an ALJ chooses 'must *in fact* constitute examples of a broader development.'" *Attmore v. Colvin*,

3    827 F.3d 872, 877 (9th Cir. 2016) (quoting *Garrison*, 759 F.3d at 1018).  The ALJ also cited a

4    June 2015 exam where "[C.D.] reported his mood was up and down [and] described being irritable

5    and having no patience with his children."  AR 26.  She did not note that this was a VA claim

6    exam and that the examining psychologist concluded that C.D. "continues to meet DSM IV and

7    DSM V criteria for PTSD [and his] symptoms continue to be in the severe range with deficiencies

8    in most area[s]."  AR 1190, 1199-1200.  Thus, while some treatment notes reflect improvements,

9    the medical evidence as a whole does not indicate that C.D. sustained these improvements over

10   time.

11         Nevertheless, the ALJ appears to have concluded that C.D.'s symptoms had improved

12   significantly by December of 2017, citing a note indicating that he "enjoyed the weekends cooking

13   and spending time with his family."  AR 26.  In support, the ALJ cited the record from C.D's

14   December 20, 2017 telehealth appointment with a dietitian, who asked C.D. about his "meal

15   pattern."  *See* AR 1091-93.  There is no indication in the record that this dietitian attempted to

16   assess C.D.'s mental health or that her report concerned C.D.'s mental functioning, as opposed to

17   his eating habits.  This evidence does not support the ALJ's assessment that Dr. Boriskin's

18   opinions are inconsistent with other evidence in the record.  *See Diedrich*, 874 F.3d at 641

19   (orthopedist's failure to mention claimant's mental health symptoms "says little about the extent to

20   which [claimant] may in fact have been suffering from such symptoms"); *L.L. v. Kijakazi*, No. 20-

21   cv-07438-JCS, 2022 WL 2833972, at *12 (N.D. Cal. July 20, 2022) (ALJ erred in relying on

22   "'cherry-picked' observations regarding [claimant]'s presentation that were unrelated to the issue

23   for which [claimant] was being seen and examined.").

24         In sum, the ALJ's stated reasons for discounting Dr. Boriskin's opinions as "not

25   persuasive" are not supported by substantial evidence.

26              **4.    ALJ's Independent Assessment**

27         Having rejected all of the medical opinions regarding C.D.'s mental impairments in the

28   record as "not persuasive," the ALJ appears to have relied upon her own lay assessment of the

United States District Court
Northern District of California

United States District Court
Northern District of California

limiting impact of C.D.'s mental and other impairments.  This was improper.  *See Cox v. Kijakazi*, No. C 21-09850 WHA, 2023 WL 4188214, at *8 (N.D. Cal. June 23, 2023) ("The ALJ thus appears to have drawn her own conclusions of claimant's abilities from claimant's daily activities, and discounted the medical opinions divergent from those conclusions.  In other words, the ALJ substituted her own lay interpretation of the medical evidence contained in treatment records without deference to that of the treating and examining physicians."); *Corvelo v. Kijakazi*, No. C 20-01059 WHA, 2022 WL 1189885, at *5 (N.D. Cal. Apr. 21, 2022) ("[B]ecause the ALJ rejected every medical opinion regarding mental impairments he erroneously based his conclusion on claimant's mental limitations solely on his own lay interpretation of the raw medical evidence contained in claimant's treatment records.").  If the ALJ believed the record contained insufficient evidence regarding the severity of C.D.'s mental impairments, she could have developed the record further; she was not free to simply substitute her own lay opinions for those of C.D.'s treating providers.  *See Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) ("The ALJ always has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered even when the claimant is represented by counsel.") (cleaned up).

### B.    VA Disability Rating

C.D. contends that the ALJ erred by failing to consider his 100% disability rating from the VA.  Dkt. No. 15 at 8.  The Court disagrees.

While older Ninth Circuit precedent directed ALJs to give "great weight" to VA disability determinations, in 2017 the Social Security Administration revised its regulations regarding "decisions by other government agencies."  *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)); 20 C.F.R. §§ 404.1504, 404.1520b(c)(1).  The new regulations, which apply to claims filed after March 27, 2017, state that the decisions of other agencies are "neither valuable nor persuasive" and that "we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits."  20 C.F.R. §§ 404.1520b(c)(1), 404.1504.  Under the new regulations, it was not error for the ALJ to exclude C.D.'s VA disability rating from her analysis.  *See Kitchen*, 82 F.4th

1   at 739.

2   **C.      C.D.'s Subjective Testimony**

3       C.D. argues that the ALJ erred by failing to provide specific, clear and convincing reasons

4   for discounting his testimony about the intensity, persistence and limiting effects of his symptoms.

5   Dkt. No. 15 at 10.  The Court agrees.

6                       **1.      Summary of C.D.'s Testimony**

7       At the hearing, C.D. testified that he had significant issues with his short-term and long-

8   term memory.  AR 55 ("Q: If you went to the store without a list could you remember the things

9   that you might need?  A: No, I wouldn't, I wouldn't even try."); AR 58 ("My short-term recall

10  is[,] compared to when I was practicing law and [] felt good[,] very bad now."); AR 59 ("I've lost

11  large chunks of my memory . . . The first couple years of [] my son's life, [] I have no recollection

12  of.").  He testified that he relied on reminders on his phone and from his wife to perform everyday

13  tasks like showering or taking out the trash.  AR 50-51, 61-62.

14      C.D. reported that he had difficulty motivating himself to complete tasks and found it hard

15  to focus enough to "get through books."  AR 53, 62.  He also said that he "get[s] angry a lot" and

16  "limit[s his] exposure to other people" because he has "a hard time relating to [] people [] who

17  haven't experienced what I have."  AR 56; *see also* AR 61 ("I just am very uncomfortable around

18  other people, especially people I'm not familiar with.").  He testified "there's been periods where

19  my wife and I were considering separation because of [] my anger issues" and "I yell at the kids or

20  [am] not [] able to control myself."  AR 56.

21      C.D. testified that he had taken "many medications" for his conditions, but "they didn't

22  help [] to the extent I would [] expect them to and they added additional problems on top."  AR

23  57.  He also testified that his wife, a pharmacist, "helped me a lot [in] monitoring the medications"

24  and "was instrumental in helping me get off some of these [medications] that had [] certain side

25  effects."  AR 57.

26                       **2.      Legal Standard**

27      An ALJ is not "required to believe every allegation" of impairment.  *Treichler v. Comm'r*

28  *of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014).  In assessing a claimant's subjective

United States District Court
Northern District of California

testimony, an ALJ conducts a two-step analysis.  First, "the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (cleaned up).  If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so."  *Id*.  That is, the ALJ must make an assessment "with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Id*.  A reviewing court is "constrained to review the reasons the ALJ asserts."  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### 3.    Application

The ALJ concluded that C.D.'s medically determinable impairments could reasonably be expected to cause the symptoms he described, but his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  AR 21.  She supported this conclusion with citations to several pieces or categories of evidence in the record.  *See* AR 21-24.

As the Court will discuss below, the evidence cited by the ALJ does not amount to specific, clear and convincing reasons, supported by substantial evidence, to discount C.D.'s testimony.

### a.    Reported activities

In discounting C.D.'s testimony, the ALJ pointed to instances where C.D. "considered teaching some courses" and "had plans to start working on writing his novel" as evidence that "his symptoms were not as severe as he initially alleged."  AR 23 (citing AR 1152, 1168).  Inconsistency between a claimant's testimony and his reported activities is a valid reason to discount his testimony.  *Burrell*, 775 F.3d at 1137-38.  But here, there is no inconsistency.  The fact that C.D. hoped or planned to become more active is not inconsistent with his reported symptoms.  *See Attmore*, 827 F.3d at 878 (fact that claimant "discussed going back to school . . . was not itself a sign of improvement—especially because [the claimant did not] follow through

United States District Court
Northern District of California

with her plans").

The ALJ also referred to an instance where C.D. stated that he was overseeing the remodeling of his kitchen. AR 23 (citing AR 1171). However, there is no information in the record about what this activity entailed, making it impossible for the ALJ to conclude that overseeing a kitchen remodel conflicted with the limitations C.D. described. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (ALJ erred by discounting claimant's testimony based on alleged conflict with activities about which there was "almost no information in the record").

Finally, the ALJ cited C.D.'s role as the primary caregiver for his two sons as a stay-at-home parent as evidence that his symptoms were not as severe as he claimed. AR 23 (citing AR 1164, 1171). But "the mere fact that [C.D.] care[d] for small children does not constitute an adequately specific conflict with [his] reported limitations." *Trevizo*, 871 F.3d at 682. "Many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). C.D.'s hearing testimony regarding his childcare obligations does not suggest that it was comparable to full time work. He testified that he cared for his children in some ways, like "try[ing]" to help them with schoolwork, preparing them instant ramen and cereal, and participating in household chores with them. AR 50-52. However, C.D. also said that he "spend[s] a lot of time in [his] room" and that "my boys are very self-sufficient and very understanding and they know that—you know, [] leave dad alone." AR 50, 60.

### b.    Improved symptoms

The ALJ cited several instances in C.D.'s medical records where he reported improvement in his symptoms. AR 23 (citing AR 1165, 1177, 1221). However, these records "must be viewed in light of the overall diagnostic record." *Trevizo*, 871 F.3d at 680 (quoting *Ghanim*, 763 F.3d at 1164). "Reports of improvement in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison*, 759 F.3d at 1017 (cleaned up). While symptoms may "wax and wane" or "subside during treatment," *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017), "it is error for an ALJ to pick out a few

1    isolated instances of improvement over a period of months or years and to treat them as a basis for

2    concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017.

3           Here, the ALJ failed to consider how the improvements referenced in C.D.'s medical

4    records fit into the "overall diagnostic record." *Ghanim*, 763 F.3d at 1164.  For example, the ALJ

5    relied on notes from a March 5, 2015 therapy session in which Dr. Boriskin described C.D. as

6    engaging with others more and doing "dramatically better," but also noted that he was still dealing

7    with a "marriage crisis" and had a "verbal outburst" at his son.  AR 1221-22.  As discussed above,

8    the ALJ "cherry-picked" Dr. Boriskin's positive characterizations of C.D., while overlooking his

9    observations about C.D.'s impairments.  *Ghanim*, 763 F.3d at 1164.

10          The ALJ also did not consider how these reports of improvement fit into the overall picture

11   of C.D.'s health.  *See Garrison*, 759 F.3d at 1017 ("[I]mproved functioning while being treated

12   and while limiting environmental stressors does not always mean that a claimant can function

13   effectively in a workplace."); *Holohan*, 246 F.3d at 1205 ("That a person who suffers from severe

14   panic attacks, anxiety, and depression makes some improvement does not mean that the person's

15   impairments no longer seriously affect her ability to function in a workplace.").  Moreover, it is

16   not clear from the record that C.D.'s improvements were sustained and significant, such that he

17   could engage in gainful employment.  *See Attmore*, 827 F.3d at 878.

18                          **c.      Mental status exams**

19          The ALJ also described C.D.'s normal performance on mental status exams as weighing

20   against the credibility of his reported symptoms.  AR 23-24 (citing AR 1083-84, 1152-53, 1158-

21   60).  However, the results of C.D.'s mental status exams have little relevance to most of C.D.'s

22   symptoms of PTSD and depression.  *See Ghanim*, 763 F.3d at 1164 ("observations of cognitive

23   functioning during therapy sessions do not contradict [a claimant's] reported symptoms of

24   depression and social anxiety.").  Additionally, some of the treatment notes cited by the ALJ

25   confirm C.D.'s reports of his symptoms.  *E.g.* AR 1159-60 ("Reports feeling more irritable and

26   down with decreased energy and motivation.  No clear stressor but possibly anniversary reaction

27   to when he went inpatient.  Sleep and nightmares at baseline.  More hypervigilance. . . .

28   ASSESSMENT: Patient with PTSD is experiencing an exacerbation.").

#### d.      Response to medications

The ALJ also discounted C.D.'s testimony regarding his symptoms because it appeared "they were well controlled with regular medication and treatment."  AR 23.  At the hearing, C.D. testified that he had "been on many medications," but "gave up on them" because "[t]hey didn't help . . . to the extent that I would expect them to and they added additional problems on top." AR 57.  The ALJ believed that this testimony was undercut by the fact that "Dr. Leyba [C.D.'s psychiatrist] noted that the claimant's medication was very effective against the claimant's mood swings, despite the side effects from his medication."  AR 23 (citing AR 1135).

The ALJ has somewhat misconstrued the record here.  The source she cited is a December 19, 2016 email that C.D. sent to Dr. Leyba, in which he asked to "talk to you at your first availability about transitioning from carbamazepine [a mood stabilizer] to a drug with fewer side effects."  AR 1135.  C.D. added that "[m]y biggest concern is that aside from the side effects, it has been very effective for me in controlling my racing thoughts, mood swings, despair, etc."  AR 1135.  In another email sent a few days later, C.D. asked Dr. Leyba how quickly he could taper off the medication, stating "How much and how fast is safe?  I'm pretty nervous about it, but like I said, I need to do something."  AR 1134.  This evidence is not inconsistent with C.D.'s hearing testimony that his medications had significant side effects, even if the record reflects that they also provided benefits.

#### e.      Activities of daily living

The ALJ found that C.D's reported symptoms were inconsistent with his activities of daily living, which were "suggestive of an individual who is capable of a certain level of mental prowess, physical capabilities, and overall motivation necessary for certain types of work."  AR 24.  The only examples she provided were that "[i]n January 2016, the claimant reported he was reading a great deal" and that "in December 2017, [he] noted he liked to cook for himself, his family during the weekends, and attend jujitsu classes regularly."  AR 24.  However, as discussed above, these activities are not necessarily inconsistent with C.D.'s statements about his impairments or inconsistent with an inability to function in a workplace environment.  *Garrison*, 759 F.3d at 1016 ("[I]impairments that would unquestionably preclude work and all the pressures

United States District Court
Northern District of California

of a workplace environment will often be consistent with doing more than merely resting in bed all day."). Because the evidence regarding C.D.'s daily activities "neither contradicts his testimony nor meets the threshold for full-time work," it was not an adequate basis for the ALJ to discredit C.D.'s testimony. *Smith*, 14 F.4th at 1114.

### f.     C.D.'s appearance at hearing

The ALJ noted that "[a]t the hearing, the claimant was able to sufficiently relay information about his medical treatment, past relevant work, and activities of daily living." AR 24. However, the hearing was conducted by telephone, so the ALJ was unable to see C.D. AR 38. The hearing transcript also reflects that at one point C.D. paused while answering a question and reported that he was "shaking." AR 46-47. The ALJ does not comment on this in her assessment of C.D.'s conduct during the hearing.

***

In sum, the ALJ's bases for discounting C.D.'s subjective testimony are not supported by substantial evidence in the record.

### D.     Listing 12.15

C.D. argues that the ALJ erred by determining that he did not meet or equal the criteria for any listed impairments, and particularly that he did not meet or equal the criteria for listing 12.15 (Trauma- and stressor-related disorders). Dkt. No. 15 at 9; Dkt. No. 18 at 1-3. The Court agrees.

In determining whether a claimant is disabled, the ALJ is required to consider whether the claimant's impairments meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds the claimant's impairments meet or medically equal a listed impairment, the claimant is conclusively presumed disabled without consideration of the claimant's age, education, or work experience. *Id.* § 404.1520(d).

For mental impairments, in order to determine whether the claimant's impairments meet or equal a listed impairment, the ALJ must rate the severity of the claimant's mental limitations in four broad categories of work-related mental functioning known as the Paragraph B criteria: (1) understanding, remembering, and applying information; (2) interacting with others; (3)

18

1    concentrating, persisting, and maintaining pace; and (4) adapting and managing oneself.  *Id.* §§

2    404.1520a(b)(2), (c)(3).  The claimant's impairments in these four categories must be rated on a

3    five-point scale: none, mild, moderate, marked, or extreme.  *Id.* § 404.1520a(c)(4).  In order to

4    meet or equal the severity of a listed impairment, the claimant must have an "extreme" limitation

5    in one of the four categories, or "marked" limitations in two of the four categories.  20 C.F.R. Pt.

6    404, Subpt. P, App. 1, § 12.00.A.2.b.

7        Where the ALJ determines that a claimant fails to satisfy the Paragraph B criteria, some

8    mental impairments also have alternative Paragraph C criteria that can be met instead of the

9    Paragraph B criteria.  *See id.* § 12.00.A.2.c.  To satisfy Paragraph C, a mental disorder must be

10   "serious and persistent," meaning that:  (1) there is a medically documented history of a listed

11   disorder over a period of at least two years; (2) the claimant "rel[ies,] on an ongoing basis, upon

12   medical treatment, mental health therapy, psychosocial support(s), or a highly structured

13   setting(s), to diminish the symptoms and signs of [their] mental disorder;" and (3) that the

14   claimant has "achieved only marginal adjustment."  *Id.* §§ 12.00.G.2.a-c; *see also Craig N. v.

15   Saul*, No. 19-CV-05235-TSH, 2020 WL 4284845, at *21 (N.D. Cal. July 27, 2020) (discussing

16   Paragraph C).[8]

17       With respect to the ALJ's 12.15 listing determination, C.D. argues that the ALJ erred in

18   assessing the severity of his mental health conditions.  Dkt. No. 15 at 9.  The Court agrees that the

19   ALJ's underlying assessments of the evidence—specifically, the opinions of C.D.'s treating

20   providers and his own subjective testimony—are not supported by substantial evidence.  These

21   errors impact the ALJ's step-three determination regarding whether C.D.'s impairments meet or

22   medically equal a listed impairment.  *See, e.g.*, *T.J. v. Saul*, No. 19-cv-06516-LB, 2020 WL

23   7664464, at *8 (N.D. Cal. Dec. 21, 2020).

24

25

26   [8] Prior to analyzing the Paragraph B and C criteria, the ALJ must find that the claimant exhibits
     the medical criteria present in Paragraph A of the listing.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1
27   § 12.00.A.2.a.  The ALJ did not make an express finding in C.D.'s case, but the Court assumes
     this finding is implied by her determination that C.D. had the severe impairments of PTSD and
28   major depressive disorder.  *See* AR 18.

United States District Court
Northern District of California

1

**E.   Residual Functional Capacity**

2   C.D. argues that the ALJ's RFC finding was not supported by substantial evidence in the

3   record.  Dkt. No. 15 at 15-17.  The Court agrees.

4   An ALJ assesses a claimant's RFC "based on all the relevant evidence in [the] case

5   record."  20 C.F.R. § 404.1545(a)(1).  The ALJ must consider both the medical evidence and

6   "descriptions and observations of [the claimant's] limitations from [the claimant's] impairment(s),

7   including limitations that result from [the claimant's] symptoms, such as pain, provided by [the

8   claimant, family, friends, or other people.]"  *Id.* § 404.1545(a)(3).

9   Here, because the ALJ erred in assessing the opinions of Mr. Cleveland and Dr. Boriskin

10   and in assessing C.D.'s subjective testimony, her RFC finding is not supported by substantial

11   evidence in the record.  While the ALJ's RFC incorporated some limitations based on C.D.'s

12   testimony regarding his symptoms, the ALJ did not fully credit his testimony, and the RFC does

13   not reflect all of the limitations he claims to have.  AR 21-24.  In these circumstances, the Court

14   concludes that the ALJ erred in her assessment of C.D.'s RFC.

15   **IV.   DISPOSITION**

16   C.D. asks the Court to remand for payment of benefits.  Dkt. No. 15 at 18; Dkt. No. 18 at

17   6-7.  "An automatic award of benefits in a disability benefits case is a rare and prophylactic

18   exception to the well-established ordinary remand rule."  *Leon v. Berryhill*, 880 F.3d 1041, 1044

19   (9th Cir. 2017) (cleaned up).  The Court may remand for an immediate award of benefits only

20   where (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether

21   claimant testimony or medical evidence; (2) there are no outstanding issues that must be resolved

22   before a determination of disability can be made; and (3) it is clear from the record that the ALJ

23   would be required to find the claimant disabled were such evidence credited.  *Id.* at 1045.  Even

24   when all three conditions are satisfied and the evidence in question is credited as true, it is within

25   the district court's discretion whether to make a direct award of benefits or to remand for further

26   proceedings when the record as a whole creates serious doubt as to disability.  *Id.*

27   This standard is not satisfied here.  A final determination cannot be made absent a proper

28   assessment of the medical opinions and testimony in the record.  As discussed above, on remand

United States District Court
Northern District of California

the ALJ must reconsider:  (1) the persuasiveness of Mr. Cleveland's and Dr. Boriskin's opinions; (2) the credibility of C.D.'s subjective testimony; (3) whether C.D. meets or equals a listed impairment; and (4) C.D.'s RFC.  Additionally, the ALJ may wish to consider whether further development of the record is warranted.

## V.        CONCLUSION

Based on the foregoing, C.D.'s motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, and this matter is remanded for further proceedings consistent with this order.  The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: January 3, 2024

VIRGINIA K. DEMARCHI
United States Magistrate Judge